23CA0954 Peo v Garcia 07-16-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0954
Arapahoe County District Court No. 16CR3397
Honorable David Karpel, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

David Alberto Garcia,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE LUM
Welling and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 16, 2026

Philip J. Weiser, Attorney General, Majid Yazdi, Senior Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, John Plimpton, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, David Alberto Garcia, appeals his convictions entered on a jury verdict finding him guilty of first degree felony murder and first degree burglary.  We reverse and remand for a new trial.

## I.    Background

¶ 2    The prosecution presented evidence at trial from which the jury could find the following facts.

¶ 3    One night, Garcia and two of his friends, Francisco Talamantes and Louis Zamora, drove to a motel in Aurora after Talamantes learned that an informant — whom he wanted to harm — was in one of the rooms.  After arriving at the motel, Garcia and Zamora went to the room to find out if the informant was there while Talamantes waited in the car.  When they arrived, several people were inside, but none of them was the informant.  Zamora and Garcia learned that the informant had left about twenty minutes before they arrived.  Garcia and Zamora went back to the car and told Talamantes that the informant wasn't there.

¶ 4    Despite this, Talamantes insisted on going back to the room, and Garcia and Zamora followed.  The three men knocked on the door but weren't allowed in; instead, a woman came outside and

spoke to them. Talamantes then entered the room uninvited, pointed a gun at the occupants, and demanded to know where the informant was. Garcia and Zamora followed Talamantes inside.

¶ 5 Meanwhile, the victim (who was not the informant Talamantes sought) had left the room to buy beverages from a nearby vending machine. When he came back, he was unwilling to cooperate with Talamantes's demands, and Talamantes fatally shot him. Talamantes, Zamora, and Garcia immediately fled the scene afterward. Garcia was arrested days later. A jury convicted him of first degree felony murder and first degree burglary.

¶ 6 On appeal, a division of this court reversed Garcia's convictions and remanded for a new trial, concluding that the trial court reversibly erred by denying his motion to redact two statements from his police interview, which was played for the jury. *See People v. Garcia*, (Colo. App. No. 18CA0776, June 24, 2021) (not published pursuant to C.A.R. 35(e)) (*Garcia I*).

¶ 7 At the retrial, the prosecutor once again played a recording of the interview. And despite an earlier representation that the two problematic statements had been redacted, one of them hadn't been, and the jury heard it. Defense counsel objected, and the

judge called a recess, releasing the jury for the remainder of the day. The next day, the court instructed the jury to disregard in its entirety the video it had viewed the previous day. The prosecutor then played the properly redacted interview video for the jury. The jury found Garcia guilty of felony murder and first degree burglary, and he was sentenced to life in prison without the possibility of parole.

¶ 8    Garcia argues that the trial court erred by (1) denying his motion for mistrial based on the inclusion of the mistakenly unredacted statement; (2) denying his request to exclude an additional statement from the interview; (3) giving the 2022 model criminal jury instruction for reasonable doubt; (4) violating double jeopardy principles; and (5) allowing the prosecutor to engage in misconduct during closing argument. Lastly, Garcia argues that these alleged errors cumulatively violated his right to a fair trial. We agree with Garcia's first contention and reverse his conviction on that basis. Because they are likely to arise in the same way on remand, we also address his second through fourth contentions. However, we need not address his contentions regarding prosecutorial misconduct and cumulative error.

## II.    Motion for Mistrial

¶ 9    Garcia first argues that the trial court erred when it denied his motion for mistrial after the same reversible error occurred in the second trial because the prosecutor failed to redact parts of Garcia's police interview.  We agree.

### A.    Additional Background

¶ 10    During the police interview, two detectives questioned Garcia about the shooting in this case, along with several other assaults. At the start of the interview, Detective Daniel Andrews informed Garcia that he was in custody on a warrant for a different incident — the "Stone shooting" — that had occurred two and a half weeks prior to the police interview.[1]  *Garcia I*, slip op. at ¶ 14.  The jury did not hear this part of the interview and was otherwise unaware of Garcia's involvement in other assaults.  Detective Todd Frederickson suggested that they discuss "what led to [Garcia] being brought down to the Denver station tonight."  Referencing the

---

[1] The completely unredacted version of Garcia's interview isn't in the record for this appeal.  However, the division in *People v. Garcia*, (Colo. App. No. 18CA0776, June 24, 2021) (not published pursuant to C.A.R. 35(e)) (*Garcia I*), explained the interview topics, and neither party disputes *Garcia I*'s characterization.

Stone shooting, Garcia told the detectives how he had received a message that his mother had been arrested, so he asked his brother-in-law for a ride to Thornton. Garcia said that his brother-in-law "didn't have no idea what was going on right now [or] that [Garcia's arrest] was going to happen," and he explained how he had considered turning himself in to the police.

¶ 11 In *Garcia I*, the division concluded that the district court reversibly erred by not redacting the following statement:

> Yeah, well one of my family members kept telling me, ya know "turn yourself in, turn yourself in," I don't like to turn myself in, ya know that. I'm like, there's reasons why I did it, but still it doesn't justify . . . ya know, the action that happened . . . . I did think about turning myself in . . . but I — I just wanted to be with my family, ya know, my wife and my son ya know? At least enjoy it . . . enjoy it while it lasts I guess. . . . I dunno . . . I'm jus' . . . I'm jus' scared ya know to leave them . . . out here. I wanna protect them, ya know?

*Garcia I*, slip op. at ¶¶ 14, 25.

¶ 12 At the pretrial conference before Garcia's second trial, the prosecutor said that he had made the court-ordered redactions, and during trial, the court admitted the video into evidence. Without realizing that the statement hadn't been redacted, the prosecution

5

published the video to the jury. Shortly after the jury heard the statement, defense counsel objected, and the court held a bench conference at which it ordered the prosecution to make the appropriate redactions. The court then told the jury, "[T]here are some matters I have to take up with the attorneys . . . . [W]e're going to give you a break today and we're going to recess for today."

¶ 13 The next day, defense counsel moved for a mistrial, arguing that the statement the jurors heard was too prejudicial to be remedied by other means, such as a limiting instruction. The trial court denied the motion. It then instructed the jury, "I'm hereby ordering you to disregard everything that you heard on that tape [yesterday]; you will not and shall not consider that tape for any purpose whatsoever. We're going to start over this morning with the playing of a new tape that has been admitted by the People." The jury then heard the interview again, this time with the inadmissible statement redacted.

B. Standard of Review and Applicable Law

¶ 14 A decision on a motion for mistrial "is committed to the sound discretion of the trial court, and its ruling will not be disturbed absent a clear showing of abuse of discretion and prejudice to the

6

defendant." *People v. Ortega*, 899 P.2d 236, 238 (Colo. App. 1994). "A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law." *People v. Pellegrin*, 2021 COA 118, ¶ 18, *aff'd on other grounds*, 2023 CO 37.

¶ 15    A trial court may issue a curative instruction to correct an error that exposes the jury to inadmissible evidence. *See Vigil v. People*, 731 P.2d 713, 716 (Colo. 1987). However, no curative instruction suffices when inadmissible evidence "is so highly prejudicial . . . it is conceivable that but for its exposure, the jury may not have found the defendant guilty." *People v. Goldsberry*, 509 P.2d 801, 803 (Colo. 1973).

### C.    Analysis

¶ 16    The division in *Garcia I* concluded that the trial court reversibly erred by admitting this statement because it heavily implied an admission of guilt and the jury was left without the necessary context to discern that Garcia was referencing the Stone shooting rather than the shooting underlying this case. *Garcia I*, slip op. at ¶¶ 21, 24, 31. Further, the division rejected many of the

7

same harmlessness arguments the People raise now, and we agree with the division's reasoning. *Id.* at ¶ 30.

¶ 17     Nonetheless, the People contend that any error in playing the unredacted interview for the jury was not so prejudicial as to require a mistrial because the evidence of Garcia's guilt in the second trial was overwhelming and the court's instruction to disregard the video mitigated any prejudice. We disagree.

¶ 18     We first reject the People's argument that the evidence against Garcia was overwhelming. Much of the evidence about whether Garcia was the shooter and the extent of his participation in the shooting conflicted. One witness testified at trial that she didn't know who the shooter was and vacillated in her police interview between identifying Talamantes and Garcia. Talamantes testified that he, not Garcia, shot the victim. He also testified that (1) he, Garcia, and Zamora had no plan about "what was going to happen" when the three of them headed back up to the room; (2) Garcia and Zamora only "knew [he] was there to collect some money" from the

informant; and (3) Garcia never encouraged him to plan or commit burglary.[2]

¶ 19 Next, we conclude that the prejudice to Garcia was too substantial to be remedied by the curative instruction. *See People v. Owens*, 2024 CO 10, ¶ 125. The jury heard Garcia say, "[T]here's reasons why I did it," and "I did think about turning myself in," before the court called a recess and excused the jury for the day. "Courts have long recognized that an un-coerced confession 'is among the strongest kinds of physical evidence the prosecution may produce.'" *Rael v. People*, 2017 CO 67, ¶ 32 (citation omitted); *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) ("[T]he defendant's own confession is probably the most probative and damaging evidence that can be admitted against him . . . ." (citation omitted)). And in some ways, how trial unfolded called greater attention to the inadmissible statements because the unredacted snippet of video was the last (or nearly the last) evidence the jury heard before recessing for the day, and the court didn't give a curative instruction until the following morning. For these reasons, we

---

[2] Notably, Talamantes didn't testify at Garcia's first trial.

conclude that the trial court erred by denying the motion for a mistrial and that the denial prejudiced Garcia. Accordingly, we reverse the convictions.

### III. Additional Statement

¶ 20 Garcia next contends that the trial court erred when it denied his request to redact his statement, "They didn't even have no idea what was going on right now, that this was going to happen," from the recording of his police interview. We agree.

### A. Standard of Review and Applicable Law

¶ 21 We review a trial court's evidentiary ruling for an abuse of discretion. *Kaufman v. People*, 202 P.3d 542, 553 (Colo. 2009). To be admissible, evidence must be relevant. CRE 402. Evidence is relevant if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. However, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." CRE 403.

B.    Analysis

¶ 22    Recall that Detective Frederickson initially informed Garcia that he had been arrested in connection with the Stone shooting and asked Garcia to explain what happened on the night of his arrest.  *Garcia I,* slip op. at ¶ 14.  In response, Garcia told the detectives that he had asked his brother-in-law for a ride to Thornton.  Garcia then made the statement, "They didn't even have no idea what was going on right now, that this was going to happen," meaning that his brother-in-law didn't know Garcia was going to be arrested.

¶ 23    Garcia's statement could indicate his awareness that he was going to be arrested, so it might be marginally relevant as evidence of a guilty conscience.  It's not clear from the interview, however, whether he's talking about being arrested for *this* shooting.  He could have been referring to his impending arrest for the Stone shooting or for the other two assaults the police questioned him about.  Thus, we conclude the court erred by denying Garcia's motion to exclude the statement because the danger of confusion and prejudice substantially outweighs the statement's slight probative value.  *See* CRE 403.  Because we reverse Garcia's

conviction on other grounds, we need not determine whether the error was harmless.

## IV.   Reasonable Doubt Instruction

¶ 24    Garcia argues that the trial court lowered the prosecution's burden of proof when it gave a jury instruction equating "reasonable doubt" to "a real possibility that the defendant is not guilty."  We disagree.

¶ 25    As relevant here, the trial court instructed the jury as follows:

> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.  If you are firmly convinced of the defendant's guilt, then the prosecution has proven the crime charged beyond a reasonable doubt.  But if you think there is *a real possibility that the defendant is not guilty*, then the prosecution has failed to prove the crime charged beyond a reasonable doubt.

(Emphasis added.)  This jury instruction is identical to the Colorado model criminal jury instruction from 2022.  *See* COLJI-Crim. E:03 (2022).[3]

---

[3] The relevant portion of the model jury instruction language regarding presumption of innocence, burden of proof, and reasonable doubt is the same today as it was in 2022.  *See* COLJI-Crim. E:03 (2025).

¶ 26    We review de novo whether a jury instruction impermissibly lowered the prosecution's burden of proof. *See Tibbels v. People*, 2022 CO 1, ¶ 22. At least two divisions of this court have already examined and rejected Garcia's argument. *See People v. Schlehuber*, 2025 COA 50; *People v. Berumen*, 2025 COA 93. In *Schlehuber*, the division held that the "real possibility" language "correctly directs the jury not to acquit . . . simply because it can conceive of some fanciful possibility that the defendant is not guilty." *Schlehuber*, ¶ 31. Further, the division concluded that the language doesn't lower or shift the burden of proof because nothing in that phrase suggests that the defendant must be "the source of the 'real possibility.'" *Id.* at ¶ 34 (citation omitted). We agree with the divisions in *Schlehuber* and *Berumen* and conclude that the district court didn't err.

## V. Double Jeopardy

¶ 27    Next, Garcia argues that the trial court violated double jeopardy principles when it allowed the prosecution to assert its theory in the second trial that Garcia shot the victim. We disagree.

13

## A.     Additional Background

¶ 28     In the first trial, the prosecution argued that Garcia was liable either as a principal or as a complicitor for the murder and the burglary. *Garcia I,* slip op. at ¶ 8.  For the burglary, the verdict form included two interrogatories relating to crime of violence sentence enhancers for (1) use or possession of a deadly weapon and (2) causing the death of another.  *See* § 18-1.3-406(2)(a)(I)(A)-(B), C.R.S. 2025.  The verdict forms asked the jury to check a box for one of the two following statements for each sentence enhancer:

*Deadly Weapon*

- "We, the jury, unanimously find, beyond a reasonable doubt, that the defendant . . . used, or possessed . . . a deadly weapon during the commission of the offense named in this count, or in the immediate flight therefrom."

- "We, the jury, do not so find."

*Death of Another*

- "We, the jury, unanimously find, beyond a reasonable doubt, that the defendant . . . caused the death of

14

another . . . during the commission of the offense named in this count, or in the immediate flight therefrom."

- "We, the jury, do not so find."

¶ 29 For each question, the jury checked the box indicating, "We, the jury, do not so find."

¶ 30 Before the retrial, defense counsel moved to preclude the prosecution from presenting the theory that Garcia was liable as a principal for the murder (i.e., that Garcia shot the victim), arguing that the first jury necessarily decided otherwise. The trial court denied his motion.

### B. Applicable Law and Standard of Review

¶ 31 The Double Jeopardy Clauses of the United States and Colorado Constitutions provide that an accused shall not be twice placed in jeopardy for the same offense. U.S. Const. amends. V, XIV; Colo. Const. art. II, § 18. "An important principle of double jeopardy is that the government is precluded 'from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial.'" *People v. Stackhouse*, 2018 CO 60, ¶ 7 (quoting *Yeager v. United States*, 557 U.S. 110, 119 (2009)). In a retrial, a judge must "determine precisely what the jury in a first trial necessarily

15

decided." *Id.* at ¶ 8. The court "must examine the entire record from the initial proceeding to 'conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'" *Id.* (quoting *Ashe v. Swenson,* 397 U.S. 436, 444 (1970)).

¶ 32     We review de novo a claim that a conviction stemming from a particular trial theory would violate a defendant's constitutional protection against double jeopardy. *Cf. People v. Arzabala,* 2012 COA 99, ¶ 19 (reviewing de novo whether a conviction violates double jeopardy).

## C.     Analysis

¶ 33     Garcia argues that the jury's responses to the special interrogatories indicate a unanimous finding that the prosecution failed to prove that Garcia possessed a deadly weapon or caused the death of another. We disagree.

¶ 34     The jury was given only two choices: (1) reaching a unanimous decision that the prosecution proved the applicable facts or (2) failing to reach a unanimous decision. The jury's response, "We, the jury, do not so find," doesn't *necessarily* mean that the jury "unanimously found" that the prosecution failed to prove that

Garcia possessed a weapon or that he was the shooter. It could simply mean that the jury failed to reach consensus about whether the prosecution had proved those facts or not. We cannot know which meaning to ascribe to the jury's verdict, and we shouldn't speculate. *See Stackhouse*, ¶ 12.

¶ 35 The unanimity instruction the jury received doesn't persuade us otherwise. That instruction read, "The verdict must represent the considered judgment of each juror, and it must be unanimous. In other words, all of you must agree to all parts of it." By checking the box, "We, the jury, do not so find," the members of the jury could have unanimously agreed that they *could not* reach a unanimous agreement that the prosecution had proved the sentence enhancing facts.

¶ 36 For these reasons, the trial court didn't violate double jeopardy by permitting the prosecution to argue that Garcia shot the victim.

## VI. Remaining Contentions

¶ 37 Because of our disposition of this appeal, we need not address Garcia's contentions related to prosecutorial misconduct and cumulative error.

## VII. Disposition

¶ 38 The judgment is reversed, and the case is remanded for a new trial.

JUDGE WELLING and JUDGE SCHOCK concur.